[Cite as *State v. Barnes*, 2021-Ohio-4527.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ANTHONY D. BARNES | : | Case No. 2021CA00033 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                     Pleas, Case No. 2020 CR 2002


JUDGMENT:                            Affirmed


DATE OF JUDGMENT:                    December 22, 2021


APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

KYLE L. STONE                              TIMOTHY P. BOGNER
PROSECUTING ATTORNEY                       110 Cleveland Ave NW
                                           Suite 600
By: Timothy E. Yahner                      Canton, OH 44702
    110 Central Plaza South - Suite 510

Canton, OH 44702-1413
*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Anthony D. Barnes appeals the March 26, 2021 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 13, 2020, Fred Elkins was stopped for a traffic violation in Alliance Ohio and found to be in possession of fentanyl. Elkins, who was already on community control for drug possession, agreed to work with the Alliance Police Department as a confidential informant in exchange for the city's agreement to refrain from charging him for possession of fentanyl.

{¶ 3} Elkins worked for Detectives Robert Rajcan and Stephen Minich and engaged in three controlled buys from Appellant Barnes.

{¶ 4} The first buy took place on October 15, 2020. Elkins met the detectives at the Alliance Police Department, was searched, provided with fresh clothing, a body-fitted audio and video camera, and cash for the purchase. The detectives photocopied the serial numbers on the cash before giving it to Elkins.

{¶ 5} Elkins then walked to Barnes' home with the detectives watching from two different vantage points as well as watching and listening via Elkins' body camera and microphone. Elkins entered the side door of Barnes' home, used the buy money to purchase 1.21 grams of methamphetamine from Barnes and then walked back to the Alliance Police Department. Detectives again searched Elkins, confirmed he was not in possession of the buy money, and took possession of the methamphetamine he had purchased from Barnes.

{¶ 6} The second buy took place on October 19, 2020. On this occasion Elkins drove to the Alliance Police Department where he again met with the detectives. The same procedures were followed. Elkins person and vehicle were searched, he was provided with fresh clothing, a body audio and visual camera, and buy money.

{¶ 7} Elkins then drove to Barnes' home with the detectives condicting surveillance from separate vehicles. On this occasion Elkins purchased 2.80 grams of a heroin/fentanyl mixture from Barnes. Barnes' family was present on this occasion including four children. Detectives could hear children playing and running around as Elkins conducted the buy. Detective Rajcan later verified the ages of the children present as between three and eight years old. Barnes conducted the sale differently due to the presence of the children. Elkins placed the buy money on a countertop and Barnes dropped a paper bindle containing the drugs on the floor for Elkins to pick up. Elkins then returned to the Alliance Police Department, was searched, and surrendered the drugs.

{¶ 8} The final buy took place on October 20, 2020. Elkins again drove. The same protocol was followed on that occasion as was for the first two buys. Elkins purchased 2.58 grams of methamphetamine from Barnes with money provided by the detectives, returned to the Alliance Police Department, and surrendered the drugs.

{¶ 9} On each occasion the only time detectives lost sight of Elkins was when he entered Barnes' home. However, also on each occasion, the audio heard by detectives during the buy matched the video footage.

{¶ 10} The drugs from each buy were submitted to the Canton-Stark County Crime Lab and confirmed to be methamphetamine and a heroin-fentanyl mix.

{¶ 11} On November 30, 2020, the Stark County Grand Jury returned an indictment charging Barnes with one count of trafficking in heroin, one count of trafficking in a fentanyl-related compound, and two counts of trafficking in drugs, specifically methamphetamine.

{¶ 12} Barnes pled not guilty to the charges and elected to proceed to a jury trial which began on March 2, 2021. The state presented evidence from Elkins, Detective Rajcan, and two Canton-Stark County Crime Lab criminalists. Barnes presented no evidence. After hearing the evidence and deliberating, the jury found Barnes guilty as charged, He was subsequently sentenced to an aggregate prison term of thirty-six months.

{¶ 13} Barnes timely filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 14} "APPELLANT'S CONVICTION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO EACH COUNT ON WHICH APPELLANT WAS CONVICTED BECAUSE THE JURY CLEARLY LOST ITS WAY IN REVIEWING THE EVIDENCE, AND APPELLANT'S CONVICTION IS A MANIFEST MISCARRIAGE OF JUSTICE."

{¶ 15} In his sole assignment of error, Appellant argues his convictions are against the manifest weight of the evidence. We disagree.

{¶ 16} The sufficiency and manifest weight of the evidence are legally distinct issues. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest-

weight challenge questions whether the prosecution has met its burden of persuasion. *State v. Gulley*, 9th Dist. No. 19600, at 3, 2000 WL 277908 (Mar. 15, 2000).

{¶ 17} On review for manifest weight, we are to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 18} Barnes does not argue the state failed to meet its burden of production. In other words, he does not argue the state failed to prove any one element of any of the charged offenses. Instead, he argues the state failed to meet its burden of persuasion by challenging the credibility of the evidence presented.

## Credibility Challenges

{¶ 19} Barnes' overarching argument centers on Elkins as an incredible witness. Barnes points to the fact that Elkins is an addict, was under the influence during the controlled buys, that he had something to gain by engaging in controlled buys for the Alliance Police Department, was on community control for drug possession, and that he drove to the controlled buys without a valid driver's license.

{¶ 20} First, none of these facts were hidden from the jury, and the jury was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State*

*v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, 2018 WL 4677567, ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 21} Second, despite his lifestyle choices, Elkins' testimony was corroborated by the audio and video recordings of each of the buys, still photos taken from video recordings of each of the buys, the observations of the detectives during each buy, and the fact that Elkins entered each buy with cash and no drugs on his person, and exited each buy with no cash and drugs on his person. We therefore reject Barnes' arguments as they pertain to Elkins' credibility.

{¶ 22} Next, Barnes also attacks the credibility of Detective Rajcan, going so far as to characterize the detective as corrupt and indifferent to public safety for permitting Elkins to drive. Again, however, the credibility of a witness is a matter for the trier of fact to sort out. Further, whether or not Rajcan permitted Elkins to drive to the controlled buys has no bearing on whether or not Barnes sold Elkins drugs on three occasions.

{¶ 23} Fourth, Barnes points to inconsistencies within the detective's testimony regarding what time a search warrant was executed at Barnes' home. He also and faults the detective for being unable to recall what his exact location or position was while following Elkins during the October 15, 2020 buy, arguing this must mean the detective was not following Elkins and therefore Elkins obtained the drugs from another source.

{¶ 24} Like credibility, however, inconsistencies in the testimony of a witness are a matter for the trier of fact to resolve. Additionally what time the search warrant was executed had no bearing on the charges at hand. Further, Detective Rajcan also testified his inability to remember exactly what street he stood on while watching Elkins during the first buy was because it had been four months prior, and he had performed many

controlled buys since that time. He further explained that both he and Detective Minich performed surveillance of the confidential informant at the same time from different places so that Minich could have visual contact with the CI at some points and Rajcan at others. Transcript of trial (T.) 304-309. Thus either he or Minich could see Elkins at all times. Rajcan testified he personally watched Elkins enter Barnes' home and exit Barnes' home. T. 317.

{¶ 25} We conclude the jury did not lose its way in resolving any inconsistencies in the testimony of Detective Rajcan, nor in weighing his credibility.

Children Present During the Second Buy

{¶ 26} Barnes also argues the jury's finding that children were present during the second controlled buy is against the manifest weight of the evidence. He argues the only evidence presented of a juvenile present was a still photo from the video of an older teen or possibly young adult who answered the door when Elkins arrived. Detective Rajcan testified this individual was 17 or 18 years old. T. 290.

{¶ 27} But that was not the only testimony regarding children present during the second buy, nor was the older teen or young adult the reason Barnes was charged with selling the heroin/fentanyl mixture in the presence of juveniles.

{¶ 28} First, Elkins testified Barnes' family members were present during the buy, specifically children. Elkins further testified Barns conducted the second buy differently due to the presence of those children in order to hide the transaction from the children. T. 220-221. Second, Detective Rajcan testified four children could be heard and seen running around inside the house during the buy. T. 286. At a different time he witnessed children coming and going from the home and was therefore familiar with who generally

lived at the home. T. 302. Rajcan was able to confirm the ages of the juveniles as being between three and eight years old when he executed a search warrant following the last buy and spoke with the mother of the children. T. 287-289. Finally, the audio and video of the buy was played for the jury so the jury could hear the voices of the children for themselves.

{¶ 29} We conclude that even without the audio of the buy, the jury could have reasonably concluded there were juveniles present during the second buy based upon the testimony of both Elkins and Rajcan. While perhaps circumstantial, we note direct and circumstantial evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492.

Forensic Evidence and Buy Money

{¶ 30} Finally, Barnes argues no DNA or fingerprints were found on the drugs, and the buy money was never recovered. First, none of these things are required to support Barnes' convictions. Second, following the final controlled buy, Barnes told Elkins he was going to purchase more drugs and wanted Elkins to ride with him. T. 226. The jury could reasonably conclude Barnes used the buy money to obtain more product.

Conclusion

{¶ 31} Upon review of the entire record we find no indication the jury lost its way in weighing the testimony of Detective Rajcan or Elkins, nor in resolving inconsistencies. Barnes was recorded, both visually and audibly selling drugs to confidential informant Elkins on three different occasions. We further find the jury's conclusion that children were present during the second buy is not against the manifest weight of the evidence. The sole assignment of error is overruled.

{¶ 32} The judgment of conviction and sentence of the Stark County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Wise, J., J. concur.

EEW/rw